Good morning, your honors, and may it please the court. Jared Gimmer on behalf of James Mims. I would like to try to reserve two minutes for rebuttal, but we'll see how this goes. The question this court must ultimately answer is simply whether 2K2.1B6B's four-level enhancement for using or possessing a firearm in connection with another felony offense applies when a defendant finds and takes a firearm during a crime which does not amount to generic burglary and that firearm plays no further role in the offense beyond being taken and carried away by the defendant. And your honors, probably picked up pretty quickly, my argument revolves around a textual analysis of both the guideline and the commentary, which also then brings in the reasons for amendment that the commission used in 2006 to explain why it was creating the commentary issue. So both sides have cited Marufo, which is a 2011 Tenth Circuit case. The government has posited that Marufo actually completely obliterates my argument, and I understand why it does that. There was a later unpublished case that essentially said as much. But Marufo does two things that I think are very important here. First, it talks about how we analyze the guidelines. And specifically, it says three things. We must interpret the sentencing guidelines according to accepted rules of statutory interpretation. Two, we must follow language that is clear and unambiguous, except where the language leads to an absurd result contrary to, as Marufo said, legislative intent. I suppose there's a combination of legislative intent and commission intent there. And three, when a term is not defined in the guidelines, we give it its plain meaning. So Marufo reinforces, even emphasizes the textual analysis that we have to use. When the guidelines commentary says that the enhancement applies in a scenario like this one, when the other felony offense, quote, is burglary, and then continues to reference burglary in describing the factual scenario in which the enhancement applies, that functions as a clear and unambiguous limitation on the guidelines reach. It is specifically saying in this the guidelines broadly say that possessing a firearm in connection with another felony leads to the four-level enhancement. But that's a general statement. And a key rule of statutory construction is that the specific prevails over the general. But the commentary goes on to say that the firearm has the potential of facilitating another felony offense or another offense, respectively. Yes, Your Honor. Why doesn't that answer the textual problem that you're addressing? Well, there are two reasons for that. One is one that I've already mentioned. The specific prevails over the general. And when the commentary in what I've cited as note 14A, we know that since the guidelines have been amended, it's now, I believe, 13A. When the commentary makes that statement describing what in connection with means, that's a general statement. And then it immediately follows that with a very specific statement. In this very unique scenario, when the offense is burglary and the defendant finds and takes a firearm during that burglary, even though the firearm plays no further role in the offense whatsoever, the enhancement will still apply. But it has created a very specific scenario, not a broad scenario. I mean, wasn't that comment created in the context of courts finding that if you just came across a firearm during your burglary and took it and didn't use it, that that wouldn't fit within this guideline? Yes, Your Honor. There were two or three circuits on each side of that particular split prior to 2006. But I think that would suggest a clarification as opposed to specific treatment. Just a clarification to show how broad they meant the reach to be. I'm not sure I agree with that, Your Honor. And the reason I don't agree with it is because of the actual reasons for amendment that the commission gave. When the commission gave its reasons for amendment in 2006, amendment 691, it said, made two statements. And I'll paraphrase the first one, that the amendment addresses a circuit conflict pertaining to the application of this enhancement, specifically with respect to the use of a firearm in connection with burglary and drug offenses. So even the reason for amendment is explicitly saying this is about burglary. The second statement, which- Whether the broad terms of the statute applied to burglary and drug offenses. And some circuits had said it didn't. And so they were making clear, yes, it does. True, Your Honor. The follow-up statement, which is I'm going to try and directly quote, the amendment provides that in burglary offenses, these provisions apply to a defendant who takes a firearm during the course of the burglary, even if the defendant did not engage in any other conduct with that firearm during the course of the burglary. And I understand Your Honor's point. It was dealing with a circuit split. But if the commission had crafted this commentary with the intention that it apply every single time a defendant finds and takes and ultimately carries away a firearm as part of a felony offense, it could have used that kind of broad language. That would have encompassed the burglary problem. It was dealing with and would have expressed, actually, we intend this to apply a lot further than even these courts were thinking. Well, I mean, but that wouldn't- I mean, arguably, there are a lot of offenses where if you happened upon a firearm, picked it up, and took it, it wouldn't in and of itself, you know, even be a crime. It could be just finding something. I mean, that's a common defense used by felons in possession. I found the gun. I was just keeping society safe from this random gun. I found the gun. Some people might believe it. So I understand Your Honor's concern. It was dealing with a circuit split. That's true. But they specifically chose to cabin in their language. They chose burglary for a reason. And they actually explain, I think, why they've chosen burglary as part of the commentary itself. They're treating burglary as special, because burglary is special. When we're talking about generic burglary, we're talking about breaking into buildings, usually homes, where people are likely to be present. If someone breaks into a house or even a store, which was the case in Ratzloff, they broke into a gun store, there is a heightened risk that the perpetrator is going to encounter another person. And they have found a gun while committing their crime. And now they have a weapon to kill the person who found them. So they're singling out burglary because of its unique nature. And the commentary does not explicitly say that's why they're singling out burglary. But I think that is what they're getting at when they say these kinds of crimes, because they're also including drug offenses in the commentary, create an increased risk, an increased potential for violence resulting from the finding and taking of the firearm. And I, the government mentioned a few cases throughout its brief that I may need to address. So let's talk about Ratzloff and Morris briefly. The government uses that to discuss Stinson issue, which I do need to address. I need to address Stinson. Ratzloff and Morris both say essentially that this enhancement and the commentary associated with it are not inconsistent such that Stinson would prohibit applying the commentary. Both Ratzloff and Morris unambiguously involved actual burglaries. In Ratzloff, they broke into a gun store. And in Morris, the defendant admitted to breaking into a home or being a participant to an entry into a home where the guns were ultimately stolen. So part of something the government talks about, there's a series of cases on pages 9 and 10 of the government's brief where the government says this court has consistently upheld application of the enhancement on the grounds that possession of a firearm had the potential to facilitate theft or possession of stolen property offenses. The problem is none of those cases that the government is citing involved the theft of a firearm serving as the basis of the enhancement. In most of them, it was actually theft or continued possession of a stolen motor vehicle and the person was found to have a gun in their possession when they got caught. So there's a slight difference there. Well, I mean, why couldn't that apply here? I mean, if you stole some jewelry or stole a gun and someone was wanting to take it from you, you might use the gun to keep them from taking it. The problem with that, Your Honor, the government mentions the idea of double counting. And I don't consider this a double counting problem. This is not impermissible double counting. But the act of possessing a stolen firearm is itself a felony offense in pretty much every jurisdiction. So if I'm a felon and I'm prohibited from possessing a firearm, I am also committing a different felony by possessing a stolen firearm. So now my possession of the firearm gets me two levels for possession of a stolen firearm. Plus, I was a prohibited person as a felon. I possessed the firearm in connection with a different felony offense, which is possession of a stolen firearm. So I automatically get the plus four. It's, we end up with both enhancements applying in almost every scenario where a firearm is stolen, whether by the defendant or simply possessed following its theft. The challenge in some of this, and I need to go ahead and address Stinson because the government mentioned it, Stinson is not as problematic, I think, as the government presents it. First, I need to point out Stinson's continued vitality is up in the Supreme Court, but it's still binding here, I recognize that. But the United States in the Supreme Court has essentially abandoned reliance on Stinson. They've said that the Kaiser standard is the correct standard when it comes to guidelines, commentary, analysis. And they actually, the Supreme Court had to appoint amicus to represent the Stinson position. That's not necessarily entirely relevant here, but I wanted to bring it up. But Stinson, the approach that I'm advocating does not require this court to find that the commentary contradicts or directly conflicts with the guideline text itself. The commentary is creating a very narrow and very specific application of the guidelines language to a unique scenario. When the offense is burglary and the defendant finds and takes a firearm, but the firearm plays no further role in the offense. And it explains why it's created that very specific application. So I'm not sure that they're actually contradictory. It is explaining the enhancement needs to apply in this very specific scenario because of the unique nature of burglary, in my opinion. And I see I'm at two minutes, if there are no further questions. Yeah, you may reserve. Thank you, Your Honor. Good morning, Your Honors. May it please the court, counsel. I'm Lena Elam, representing the United States in this matter. Application note 13b and circuit precedent stand for the same proposition, that when a defendant obtains a firearm during the course of a felony offense, the possession of that firearm has the potential of facilitating that felony offense. Application note 13b, contrary to the arguments in Appellant's brief, is not an exception to the general principle set forth in 13a. A firearm is possessed in connection with a felony offense when it facilitates or has the potential to facilitate the other felony offense. We know this to be true for several reasons. First, as Mr. Gimmer alluded, Stinson. Stinson says the commentary to the guidelines is authoritative as long as it is not clearly erroneous or inconsistent with the guideline that it purports to analyze. And Stinson also says that guidelines commentary can have a number of purposes. It can explain a guideline and it can, among them, it can explain a guideline or it can set forth circumstances under which that guideline applies. 13a explains the guideline. It explains what the 2K2.1b, now 7b, means when it says possess a firearm in connection with another felony offense. It means facilitates or has the potential to facilitate another felony offense. 13b gives a specific application and explains and solves the circuit split that existed until 2006 in the specific context of burglary. And we know that 13b is an application, not an exception, because, as I think Judge Timkovich said, that last sentence of 13b says these circumstances warrant application of this enhancement because of the potential a firearm has to facilitate or of facilitating another felony offense. So the question is whether in context other than generic burglary, a defendant who obtains a firearm, whether his possession of that firearm has the potential of facilitating the other felony offense. I have not seen any case that suggests that under these circumstances 13a does not apply. So whether Mr. Mims' offense was third degree burglary under Oklahoma law or was larceny of firearm under Oklahoma law, both of those are offenses in which a defendant can obtain a firearm, and that firearm will have the potential of facilitating the other felony offense. As the 11th Circuit identifies in Brooks, that is because a defendant who obtains a firearm and is aware of that firearm's presence would at least be tempted to use it if the circumstances of the offense require him to defend, for instance here, the stolen property. And I think the example in Brooks is if Brooks had encountered the police or the gun's rightful owner, that firearm had the potential of facilitating his theft offense. Mr. Gimmer is correct that most of the 10th Circuit cases on this point do not involve a theft of firearm except for Morris, which is in fact a burglary case. Howard is an unpublished case by this Court that did involve a defendant alleging that 2K2.1b then 6b could not apply because the firearm was the object of a theft. And so that is the closest 10th Circuit case to these facts in which the Court upheld the application applying Marufo of that enhancement. However, the 4th Circuit in Larimore and the 11th Circuit in Brooks both confront situations very similar to this. And without addressing and without the need to address appellant's argument about generic burglary, both courts, like Howard, concluded that under Application Note 13a, a firearm stolen during a theft, a, I believe, I can't remember what the 11th Circuit offense is precisely, but all of those involve non-burglary thefts and support the application of this offense without resorting to assessing whether the underlying offenses were generic burglary. In all cases, because the possession of a firearm has precisely addresses the concern that is embodied in the 2006 amendments, that when a defendant possesses a firearm during the course of a crime, it has the potential to facilitate that crime. If there are no further questions, we would rest on our briefs. All right. It's rebuttal time. Thank you. Yes, Your Honor. Thank you. I'll quickly touch on Marufo because the government cited Howard. Howard basically disposes of this issue in essentially a single paragraph. It's a plain error case. It says Marufo constrains its analysis and that it therefore must conclude that stealing a firearm, regardless of whether it was a burglary or not, satisfies the four-level enhancement. I disagree with Howard fundamentally for obvious reasons, but also Marufo is a very different case. Marufo, the individual had been accused of murder, at least one count, and shooting another person, and he was ultimately acquitted of that, but he was found guilty of evidence tampering by disposing of the firearm that had been used in the shooting. And so he was already in possession of the firearm when he got rid of the firearm. And so he was already in possession of the firearm when he committed the crime of tampering with evidence, which was getting rid of the gun. So again, Marufo really does not speak to this idea of how does the 14B or 13B, depending on which manual we're using, how does it apply given that it starts by titling itself when the other felony is burglary. I believe at its core the specific has to control over the general, and the guideline provides a general idea. The commentary then explains that general idea with another general idea, the facilitate definition. It then follows that immediately with a specific constraint, and I believe that specific constraint controls in this case, Your Honors. I see I am out of time.  Thank you, counsel. We appreciate the arguments. And the case is submitted, and counsel are excused.